JERRY ALAN REESE, Plaintiff v. THE CITY OF CHARLOTTE and MECKLENBURG
COUNTY, NORTH CAROLINA, Defendants

No. COA08-398

(Filed 5 May 2009)

**1. Pleadings— motion for judgment on—attachments to documents**

The trial court did not err on a Rule 12 (c) motion for judgment on the pleadings by considering attachments to a document (the Interlocal Cooperation Agreement) which was itself attached to defendants' answer. By referencing the agreement in his complaint, plaintiff placed the entire agreement before the court, including the attachments.

**2. Cities and Towns; Counties— transfer of land—economic development—requirements for undertaking—severance of relationships**

An Interlocal Agreement between a city and county involving the transfer of land designed to foster economic development met the requirements for an undertaking in N.C.G.S. § 160A-460. The power to engage in joint undertakings of necessity includes the power to sever such relationships.

**3. Cities and Towns; Counties— transfer of property for economic development—private ownership**

An Interlocal Agreement between a city and county transferring property for economic development did not violate the provisions of N.C.G.S. § 160A-266. While plaintiff alleged that city property will end up in private hands without compliance with statutory provisions, there is special legislation authorizing the action in the city charter and amendments to the Session Laws.

**4. Cities and Towns; Counties— economic development— alleged abuse of discretion—pleading not sufficient**

A complaint alleging that an economic development project involving the city and county was an abuse of discretion did not meet the pleading requirements of *Barbour v. Carteret County*, 255 N.C. 177, because the complaint did not allege that public officials acted to enrich themselves or in wanton disregard of the public good. Furthermore, the complaint stated merely conclusory allegations.

**5. Cities and Towns; Counties— economic development project—strawman transfer**

A claim that an economic development project involving a city and county was a strawman for the transfer of property to private entities was without merit.

**6. Cities and Towns; Counties— economic development—constitutional issues**

Constitutional claims arising from an economic development project were without merit.

**7. Pleadings— motions to strike—denial—no abuse of discretion**

The trial court did not abuse its discretion by denying plaintiff's motion to strike portions of defendants' answer where the trial court held that the relevant portions of defendants' pleadings were an assertion that their actions were lawful and that plaintiff was seeking to have the courts supervise the activities of governmental units.

Appeal by plaintiff from judgment entered 12 October 2007 by Judge Lindsay R. Davis, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 September 2008.

*Jerry Alan Reese, pro se.*

*Womble Carlyle Sandridge & Rice, PLLC, by James P. Cooney III, and G. Michael Barnhill, for defendant Mecklenburg County.*

*Robert E. Hageman, Senior Assistant City Attorney for defendant City of Charlotte.*

STEELMAN, Judge.

The trial court properly considered attachments to documents referred to in plaintiff's complaint in deciding defendants' Rule 12(c) motion to dismiss. The transactions encompassed by an Interlocal Cooperation Agreement between the City of Charlotte and Mecklenburg County were authorized by the General Statutes and Local Acts of the North Carolina General Assembly. Plaintiff's constitutional claims were based upon a unilateral expectation of a property interest and were properly dismissed. The trial court did not abuse its discretion in denying plaintiff's motion to strike.

## I. Factual and Procedural Background

In January 2007, Mecklenburg County (County) entered into a Memorandum of Understanding with Cornerstone Real Estate Advisors, Inc. (Cornerstone) pertaining to the development and construction of Brooklyn Village, a mixed-use development to be located in Second Ward of the City of Charlotte. The Memorandum recited that County "owns or is in the process of acquiring 493,971 square feet of land located in Second Ward bounded by South McDowell Street, Third Street, Second Street, and the First Baptist Church property[.]" County agreed to swap a portion of this property for property owned by Cornerstone's parent company, with the balance of the land being retained by County for development as an urban park. The 493,971 square feet of property consists of two parcels: (1) a 5.91 acre parcel owned by the Charlotte-Mecklenburg Board of Education, and (2) Marshall Park, a 5.432 acre parcel owned by the City of Charlotte (City).

On 1 May 2007, the Mecklenburg County Board of Commissioners adopted a resolution approving an Interlocal Cooperation Agreement with the City of Charlotte and authorizing its Chair to execute the Agreement. On 14 May 2007, the Charlotte City Council adopted a resolution approving the Interlocal Agreement with Mecklenburg County and authorizing its officials to execute the Interlocal Agreement. The Interlocal Agreement was subsequently executed by both parties and referenced the Memorandum of Understanding between County and Cornerstone. It further referenced N.C. Gen. Stat. § 160A-274 as the authority for City and County to enter into the Interlocal Agreement. Under the terms of the Interlocal Agreement, City would convey to County the Marshall Park property and the Spirit Square property.

Plaintiff commenced this action (Mecklenburg County case 07-CVS-9577) by filing a summons and notice of *lis pendens* on the Marshall Park property on 15 May 2007. Plaintiff's complaint was filed on 4 June 2007 and asserted six claims for relief as follows: (1) for a declaratory judgment that the Interlocal Agreement was not a joint undertaking and was thus unlawful; (2) for a declaratory judgment that City disposed of the Marshall Park property in a manner not permitted by law; (3) for a declaratory judgment that City abused its discretion by disposing of the Marshall Park property in a hasty and ill-conceived manner; (4) for a declaratory judgment that County's acquisition of the Marshall Park property was not authorized by law; (5) for a declaratory judgment that the actions of City

and County violated plaintiff's rights to due process and equal protection; and (6) for a preliminary and permanent injunction prohibiting City from transferring the Marshall Park property to County.

On 31 May 2007, plaintiff filed a complaint (Mecklenburg County case 07-CVS-9577) seeking to prohibit the Charlotte-Mecklenburg County Board of Education from conveying property adjoining the Marshall Park property to County as part of the Brooklyn Village project. Plaintiff also filed a notice of *lis pendens* on the property of the Board of Education. On 11 July 2007, the Chief Justice designated both cases as "exceptional" cases pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts (2007).

Defendants filed answers to plaintiff's complaint, denying the material allegations contained therein, and attached to their answers a number of exhibits. On 3 August 2007, defendants in both lawsuits filed motions to strike plaintiff's notice of *lis pendens* and for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. On 17 September 2007, plaintiff filed a motion to strike a portion of the answers of City and County pursuant to Rule 12 (f) of the North Carolina Rules of Civil Procedure.

On 12 October 2007, the trial court filed an order encompassing both lawsuits that granted defendants' motions for judgment on the pleadings and dismissing both of plaintiff's motions. Defendants' motions to cancel the notice of *lis pendens* were also granted, and plaintiff's motion to strike was denied.

Plaintiff appeals.

II. Consideration of Documents Not Attached to Complaint

[1] In his first argument, plaintiff contends that the trial court erred in considering certain exhibits attached to both answers of City and County. We disagree.

City and County attached to their answers copies of certain documents. These were: (1) the Interlocal Cooperation Agreement with attachments A through K; (2) Memorandum of Understanding for the Development of Brooklyn Village; (3) Resolution of City Authorizing Execution of the Interlocal Cooperation Agreement; and (4) Resolution of County Authorizing Execution of the Interlocal Cooperation Agreement. Plaintiff acknowledges that each of these four documents were referenced in his complaint but argues that attachments C through K to the Interlocal Agreement were improperly considered by the trial court because they were not specifi-

cally referenced in the complaint. He also argues that these documents "may have not been available to Reese at the time the Complaint was filed." Plaintiff contends that by considering matters outside of the pleadings, the trial court converted defendant's Rule 12(c) motion into a Rule 56 motion for summary judgment, and he was entitled to respond to the motion and conduct discovery before the motion was heard.

We review the trial court's granting of a Rule 12(c) motion *de novo*. *Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 764 (2008). A "document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 205, 652 S.E.2d 701, 708 (2007).

In the instant case, plaintiff's complaint specifically referred to the Interlocal Agreement. Indeed, many of his claims are based upon the alleged invalidity of the Interlocal Agreement. The Interlocal Agreement specifically refers to each of the attachments A through K. The attachments are an integral part of the agreement. It is disingenuous for plaintiff to argue that since he did not specifically refer to every attachment in his complaint that they were not properly before the trial court upon defendant's Rule 12(c) motion. We hold that by referencing the agreement in his complaint, plaintiff placed the entire agreement, including all referenced attachments, before the trial court for consideration of the Rule 12(c) motion. Plaintiff's vague contention that the attachments C through K "may have not been available" is unavailing.

This argument is without merit.

### III.  Dismissal of Plaintiff's Claims

**[2]** In his second and third arguments, plaintiff contends that the trial court erred in dismissing the first five claims for relief set forth in his complaint. We disagree and address each of plaintiff's claims in turn.

### A.  First Claim—Validity of Interlocal Agreement Under Article 20 of Chapter 160A

§160A-461. Interlocal cooperation authorized.

Any unit of local government in this State and any one or more other units of local government in this State or any other state (to the extent permitted by the laws of the other state) may enter

into contracts or agreements with each other in order to execute any undertaking. The contracts and agreements shall be of reasonable duration, as determined by the participating units, and shall be ratified by resolution of the governing board of each unit spread upon its minutes.

N.C. Gen. Stat. § 160A-461 (2007).

§160A-460. Definitions.

(1) "Undertaking" means the joint exercise by two or more units of local government, or the contractual exercise by one unit for one or more other units, of any power, function, public enterprise, right, privilege, or immunity of local government.

N.C. Gen. Stat. § 160A-460(1) (2007).

Plaintiff contends that the Interlocal Agreement does not constitute a joint exercise by City and County and fails to meet the requirements of an "undertaking" as set forth in N.C. Gen. Stat. § 160A-460. Plaintiff's argument is that the Interlocal Agreement is "actually a severance of certain public enterprises, Spirit Square and the Cultural Facilities." He further contends that when all of the land swaps and severance of interests take place, there will be no joint undertakings between City and County.

Plaintiff's reading of these statutes is too narrow. The Interlocal Agreement recites its ultimate purposes:

> **WHEREAS**, both the City and County support the concept proposed by County Manager Harry Jones in his letter to Pam Syfert dated November 2, 2006 which is attached as Attachment C (the "Concept"), which would result in 1) a site for a park in the Third Ward of Center City Charlotte with connection to South Tryon Street; 2) implementation of the first phase of the Second Ward Master Plan in accordance with the Vision Statement and Master Plan attached as Attachment D (referred to as "Brooklyn Village"); and 3) development of a new stadium for the Charlotte Knights' minor league baseball team on a site in the Third Ward of Center City Charlotte, and wish to enter into this Agreement to assist each other in the accomplishment of these goals, which would advance or further City and County economic development, urban revitalization, community development and land use plans[.]

. . .

*WHEREAS*, pursuant to the Concept, the City desires to convey certain real property to the County at no cost to the County to assist in both the development of Brooklyn Village, a Third Ward park and development of a minor league baseball stadium in Center City Charlotte; and

*WHEREAS*, the County desires to assign its future ownership interest in the Wachovia Cultural Facilities to the City at no cost to the City[.]

These recitals clearly demonstrate an undertaking by City and County to achieve the specific government-related goals of development of an urban park, a mixed-use, residential-commercial community in Second Ward (Brooklyn Village), a baseball stadium in Third Ward, and sale of Spirit Square to fund infrastructure improvements for the baseball facility. All of these projects are designed to foster economic development within City and County. We reject plaintiff's arguments that N.C. Gen. Stat. § 160A-460 requires some sort of ongoing joint undertaking on the part of local government entities. The statute authorizes agreements "in order to execute any undertaking." This is very broad language, which authorizes the undertakings embodied in the Interlocal Agreement. The severance of City and County's relationships as to Spirit Square and the Wachovia Cultural Facilities does not affect this holding. The power of governmental entities to engage in joint undertakings of necessity brings with it the power to sever such relationships.

We also note that the Interlocal Agreement specifically cites as additional authority the provisions of N.C. Gen. Stat. § 160A-274. This statute provides:

(b) Any governmental unit may, upon such terms and conditions as it deems wise, with or without consideration, exchange with, lease to, lease from, sell to, or purchase from any other governmental unit any interest in real or personal property.

N.C. Gen. Stat. § 160A-274(b) (2007).

We hold that this provision constitutes additional statutory authority for the Interlocal Agreement between City and County, in particular the provision allowing for disposition without consideration.

This argument is without merit.

## B. Second Claim—Alleged Unlawful Disposition of Property by City under 160A-266

**[3]** §160A-266. Methods of Sale; limitation.

(a) Subject to the limitations prescribed in subsection (b) of this section, and according to the procedures prescribed in this Article, a city may dispose of real or personal property belonging to the city by:

(1) Private negotiation and sale;

(2) Advertisement for sealed bids;

(3) Negotiated offer, advertisement, and upset bid;

(4) Public auction; or

(5) Exchange.

N.C. Gen. Stat. § 160A-266(a) (2007).

Plaintiff alleged in his complaint that ultimately City property will end up in private hands without compliance with the provisions of N.C. Gen. Stat. § 160A-266. He alleges that "absent special legislation, the disposition of real property is not authorized by private negotiation and sale . . . ." There is special legislation authorizing the ultimate disposition by County. First, Session Law 2000-21 revised and consolidated the Charter of the City of Charlotte. Section 8.22(d) of the Charter provides:

(d) When the Council determines that a sale or disposition of property will advance or further any Council-adopted economic development, transportation, urban revitalization, community development, or land-use plan or policy, the City may, in addition to other authorized means, sell, exchange, or transfer the fee or any lesser interest in real property, either by public sale or by negotiated private sale.[1]

While City is not directly disposing of any property by direct private sale, this charter provision provides authority for City's actions based on plaintiff's argument that the Interlocal Agreement was a

---

1. Section 8-22(d) of the City of Charlotte charter does not require ten days public notice prior to the adoption of the resolution authorizing a private sale. Plaintiff made no allegation of lack of notice. Further, paragraph 40 of plaintiff's complaint alleges that on 9 January 2007, plaintiff wrote to the City Manager requesting an opportunity to bid on the Marshall Park property. This was several months prior to the adoption of the resolution authorizing the Interlocal Agreement.

sham transaction designed to circumvent the provisions of N.C. Gen. Stat. § 160A-266.

In addition, Session Laws 2000-65 and 2007-33 specifically amended N.C. Gen. Stat. § 160-266 as it applied to Mecklenburg County to authorize private sales using the identical language contained in section 8.22(d) of the City of Charlotte Charter. Based upon the recitals in the Interlocal Agreement showing that the purpose was to achieve the goals of economic development, urban revitalization, and community development, and the language of Session Law 2000-65 leaving the determination of whether the transaction advances or furthers to the Board of County Commissioners, we hold that the Interlocal Agreement between City and County, and its contemplated transfers, did not violate the provisions of N.C. Gen. Stat. § 160A-266.

This argument is without merit.

## C. Third Claim—Alleged Abuse of Discretion by City

[4] Plaintiff's complaint alleged that City manifestly abused its discretion by hastily arranging for approval of the Interlocal Agreement, failing to adopt a formal plan for the disposition of Marshall Park, failing to consider alternative dispositions of Marshall Park, not engaging a consultant or real estate broker, failing to issue a Request for Proposal to gauge interest from other parties in the Marshall Park property, and allowing County to pressure it into the Interlocal Agreement without having first thoroughly analyzed the potential value of the Marshall Park property. He contends that this stated a valid claim under *Barbour v. Carteret County*, 255 N.C. 177, 120 S.E.2d 448 (1961). We disagree.

This argument was also raised in the companion case of *Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. ——, —— S.E.2d —— (2009). The complaint in the instant case fails to allege that public officials acted to enrich themselves or in wanton disregard of the public good. As discussed in the companion case, plaintiff's complaint failed to satisfy the pleading requirements of *Barbour*.

Further, we note that the complaint and the documents referenced therein reveal that these transactions had been proposed in November of 2006 and were not "hastily arranged." The documents further reveal that City was to receive property valued at $29,500,000.00 in exchange for properties valued at $23,232,000.00 exclusive of the interest in Spirit Square. Plaintiff's complaint "states

merely conclusory allegations of grievances and offers no indication of the existence of facts which, if proven, would permit a finding of fraud, manifest abuse of discretion, or unlawful conduct." *Alamance County v. Dept. of Human Resources,* 58 N.C. App. 748, 750, 294 S.E.2d 377, 378 (1982).

This argument is without merit.

## D.  Fourth Claim—Dismissal of Claims Against Mecklenburg County

**[5]** Plaintiff's complaint alleges that County was not acquiring the property from City for its own use but was acting as a strawman for the property to eventually be transferred to Cornerstone and Spectrum. He argues on appeal that N.C. Gen. Stat. § 153A-158 restricts County to the acquisition of property "for use by the county" or its agencies and does not permit acquisition for the subsequent transfer to a private party. *See* N.C. Gen. Stat. § 153A-158 (2007). We disagree.

This argument is virtually identical to the third argument discussed in our opinion in *Reese v. Charlotte-Mecklenburg Bd. of Educ.,* 196 N.C. App. ——, —— S.E.2d—— (2009). For the reasons stated in that opinion, we hold this argument is without merit.

## E.  Fifth Claim—Due Process and Equal Protection

**[6]** In his fifth claim, plaintiff asserts that the actions of defendants violated his rights of due process and equal protection under the United States and North Carolina Constitutions. Specifically, plaintiff contends that he was deprived of his "privilege of contracting." We disagree.

This same argument was raised and discussed as plaintiff's Sixth Claim in our opinion in *Reese v. Charlotte-Mecklenburg Bd. of Educ.,* 196 N.C. App. ——, —— S.E.2d —— (2009). For the reasons stated in that opinion, we hold that this argument is without merit.

## IV.  Denial of Motion to Strike

**[7]** In his fourth argument, plaintiff contends that the trial court erred in denying his motion to strike portions of defendants' answer. We disagree.

Plaintiff's complaint contains lengthy sections dealing with parties, jurisdiction, venue, and standing; procedure; and background facts. Defendants' answers contain a section styled as "Overview," which address plaintiff's standing to bring the action and questions the right of plaintiff to seek to have the courts act as a *de facto*

receiver for the public properties at issue. Plaintiff's motion to strike is directed to the "Overview" portion of each answer.

"Rule 12(f) of the North Carolina Rules of Civil Procedure, allows the court to strike 'from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter.' " *Carpenter*, 189 N.C. App. at 759, 659 S.E.2d at 765 (2008) (quoting N.C.R. Civ. P. 12(f) (2005)). Rule 12(f) motions are "addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion." *Id.* (citation and internal quotations omitted). " ' Matter should not be stricken unless it has no possible bearing upon the litigation. If there is any question as to whether an issue may arise, the motion [to strike] should be denied.' " *Id.*, 659 S.E.2d at 766 (quoting *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108, *disc. review denied*, 295 N.C. 735, 249 S.E.2d 804 (1978)).

The trial court held that:

> The 'Overview' asserts, in words or substance, that the actions of the defendants are lawful, and characterize the relief that plaintiff seeks as efforts to have the courts supervise the activities of governmental units. These parts are sufficiently related to the allegations of the complaints that [the] motion to strike should be denied.

We discern no abuse of discretion on the part of the trial court in denying plaintiff's motion to strike.

This argument is without merit.

### V. Conclusion

The trial court properly considered the documents referenced in plaintiff's complaint in hearing defendants' Rule 12(c) motion to dismiss. The trial court did not err in granting defendants' motions and dismissing plaintiff's complaint. The trial court did not abuse its discretion in denying plaintiff's motion to strike.

AFFIRMED.

Judges JACKSON and STROUD concur.