Merrell v. Smith, 2020 NCBC 77.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

CARL E. MERRELL; LYLE RANSON;
JEANETTE RANSON; CRAIG S.
MILLER; WANDA EDWARDS
MILLER; and ROBERT J. NASTASE,

Plaintiffs,

v.

JAMES M. SMITH; JENNIFER
SMITH; and CAROLINA BEER &
BEVERAGE GROUP, LLC f/k/a
CAROLINA BEER & BEVERAGE,
LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

19 CVS 21650 [MASTER FILE]
Related Cases:
19 CVS 22027
19 CVS 23665
19 CVS 23856

**ORDER AND OPINION ON
PLAINTIFFS' MOTIONS TO STRIKE
SMITH DEFENDANTS'
AFFIRMATIVE DEFENSES**

1.     **THIS MATTER** is before the Court on the Motions to Strike Smith Defendants' Affirmative Defenses (the "Motions to Strike" or the "Motions") filed by the plaintiffs ("Plaintiffs") in *Merrell, et al. v. Smith, et al.*, (ECF No. 43 [19 CVS 21650]); *Strack, et al. v. Smith, et al.*, (ECF No. 58 [19 CVS 22027]); and *Cochrane, et al. v. Smith, et al.*, (ECF No. 44 [19 CVS 23665]) (together, the "CBB Actions").[1] Because the Motions to Strike raise the same legal issues and arguments, the Court herein considers the Motions together in this Order and Opinion.  For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part the Motions to Strike.

---

[1] The CBB Actions were originally comprised of four cases, but on September 28, 2020, the sole Plaintiff in *Short v. Smith, et al.* voluntarily dismissed without prejudice his claims against all Defendants in that case, (ECF No. 86 [19 CVS 23856]), leaving the *Merrell*, *Strack*, and *Cochrane* cases as the three remaining CBB Actions.

*Hemmings & Stevens, by Aaron C. Hemmings, for Plaintiffs.*

*Parker Poe Adams & Bernstein LLP, by Michael G. Adams, Morgan H. Rogers, Nicholas H. Lee, and Alexandra S. Davidson, and Bell, Davis & Pitt, PA, by Edward B. Davis and Adam R. deNobriga, for Defendants James M. Smith and Jennifer Smith.*

Robinson, Judge.

## I. BACKGROUND

2. The parties vary across the CBB Actions, but each lawsuit involves the same core allegations. Plaintiffs allege that they invested in Carolina Beer & Beverage Group, LLC, f/k/a Carolina Beer & Beverage, LLC ("CB&B") based on the financial advice of the late Richard C. Siskey ("Mr. Siskey"). They further allege that James M. Smith ("Mr. Smith"), Jennifer Smith ("Mrs. Smith") (together, the "Smiths"), and Mr. Siskey together engaged in a fraudulent insider trading scheme, which induced Plaintiffs to transfer their respective ownership interests in CB&B to Mr. Siskey prior to the company being sold, thereby causing Plaintiffs to miss out on the substantial profits resulting from the sale. Plaintiffs have asserted breach of fiduciary duty, constructive fraud, fraud, and civil conspiracy claims against the Smiths. Mr. Smith is the former manager and majority shareholder of CB&B, and Mrs. Smith is a former employee of the company and Mr. Smith's wife.

3. Plaintiffs initiated the CBB Actions upon filing their respective Complaints in November 2019 (*Merrell* and *Strack*) and December 2019 (*Cochrane*). (ECF Nos. 2 [19 CVS 21650]; 3 [19 CVS 22027]; 3 [19 CVS 23665].) Each of the CBB Actions was designated to the Business Court and was assigned to the undersigned in December

2019 (*Merrell* and *Strack*) and January 2020 (*Cochrane*). (ECF Nos. 1 [19 CVS 21650]; 1, 2 [19 CVS 22027]; 1, 2 [19 CVS 23665].)

4. On January 28, 2020, Plaintiffs in *Merrell*, *Strack*, and *Cochrane* filed their respective Amended Complaints, (ECF Nos. 19 [19 CVS 21650]; 28 [19 CVS 22027]; 7 [19 CVS 23665], and on March 10, 2020, Plaintiffs in *Merrell* and *Strack* filed their respective Second Amended Complaints, (ECF Nos. 24 [19 CVS 21650]; 28 [19 CVS 22027]. (The last filed complaints in the three remaining CBB Actions are respectively referred to as the "Cochrane Complaint," the "Merrell Complaint," and the "Strack Complaint," and collectively as "Plaintiffs' Complaints.")

5. On February 6, 2020, the Court held a status conference with counsel for the parties in the CBB Actions and other related litigation. (*See* ECF Nos. 20 [19 CVS 21650]; 29 [19 CVS 22027]; 11 [19 CVS 23665].) Thereafter, the parties in the CBB Actions filed their respective Case Management Plans, in which they agreed to coordinate these cases for discovery and motions practice purposes. (*See* ECF Nos. 25 [19 CVS 21650]; 34 [19 CVS 22027]; 18 [19 CVS 23665].)

6. The Smiths filed their Answers to Plaintiffs' Complaints (the "Smiths' Answers" or the "Answers") in each of the CBB Actions on April 23, 2020, raising several defenses to Plaintiffs' claims against them. (ECF Nos. 39 [19 CVS 21650] [the "Merrell Answer"]; 54 [19 CVS 22027] [the "Strack Answer"]; 38 [19 CVS 23665] [the "Cochrane Answer"].) The Smiths' Answers mirror each other for the most part.

7.      On June 1, 2020, Plaintiffs filed the Motions to Strike.[2] On that same day, they filed Memorandums in Support of the Motions to Strike. (ECF Nos. 44 [19 CVS 21650] [the "Merrell Mem. in Supp."]; 59 [19 CVS 22027] [the "Strack Mem. in Supp."]; 45 [19 CVS 23665] [the "Cochrane Mem. in Supp."].) Each of the Motions requests, pursuant to North Carolina Rule of Civil Procedure 12(f), that the Court strike several defenses from the Smiths' Answers.

8.      The Smiths filed Briefs in Opposition to the Motions to Strike in each of the CBB Actions on June 8, 2020. (ECF Nos. 47 [19 CVS 21650] [the "Merrell Br. in Opp'n"]; 65 [19 CVS 22027] [the "Strack Br. in Opp'n"]; 51 [19 CVS 23665] [the "Cochrane Br. in Opp'n"].) Plaintiffs did not file a reply brief.

9.      On October 5, 2020, the Court held a hearing by video conference on the Motions to Strike (the "October 5 Hearing"). The Motions are now ripe for resolution.

## II. LEGAL STANDARD

10.      Under Rule 12(f), a trial court "may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C.G.S. § 1A-1, Rule 12(f). "Rule 12(f) motions are viewed with disfavor and are infrequently granted." *Daily v. Mann Media, Inc.*, 95 N.C. App. 746, 748–49, 384 S.E.2d 54, 56 (1989) (internal quotation marks and citation omitted). Nevertheless, whether to grant or deny a Rule 12(f) motion to strike is

---

[2] Plaintiffs in *Short* also filed a Motion to Strike Smith Defendants' Affirmative Defenses, (ECF No. 41 [19 CVS 23856]), but as noted, this case has been voluntarily dismissed without prejudice, and therefore, this Order and Opinion does not address this motion.

within the trial court's sound discretion. *Reese v. City of Charlotte*, 196 N.C. App. 557, 567, 676 S.E.2d 493, 499 (2009).

11. "A motion under Rule 12(f) is a device to test the legal sufficiency of an affirmative defense." *Faulconer v. Wysong and Miles Co.*, 155 N.C. App. 598, 601, 574 S.E.2d 688, 691 (2002) (citing *First-Citizens Bank & Tr. Co. v. Akelaitis*, 25 N.C. App. 522, 525, 214 S.E.2d 281, 284 (1975)). "The requirements for pleading a defense are no more stringent than the requirements for pleading a claim for relief." *Vernon v. Crist*, 291 N.C. 646, 653, 231 S.E.2d 591, 595 (1977) (citing *Bell v. Traders & Mechanics Ins. Co.*, 16 N.C. App. 591, 593, 192 S.E.2d 711, 712 (1972)); *see also Mozingo v. N.C. Nat'l Bank*, 31 N.C. App. 157, 163, 229 S.E.2d 57, 62 (1976) (noting that Rule 12(f) is an "analogue to" Rule 12(b)(6) and that "the same tests apply" to both rules (citing *Akelaitis*, 25 N.C. App. at 525, 214 S.E.2d at 284)). Rule 8 sets forth the general pleading requirements for both claims for relief and defenses. *See* N.C.G.S. § 1A-1, Rule 8(a)–(c); *Smith v. N.C. Farm Bureau Mut. Ins. Co.*, 84 N.C. App. 120, 123, 351 S.E.2d 774, 776 (1987). "Rule 8 was intended to liberalize pleading requirements by adopting the concept of 'notice pleading,' thereby abolishing the more strict requirements of 'fact pleading.'" *Smith*, 84 N.C. App. at 123, 351 S.E.2d at 776 (citing *Sutton v. Duke*, 277 N.C. 94, 100, 176 S.E.2d 161, 164 (1970)).

12. Notwithstanding Rule 8's liberal pleading standards and the infrequent granting of Rule 12(f) motions, "defenses may be stricken from pleadings, if they are insufficient as a matter of law." *Nat'l Fin. Partners Corp. v. Ray*, 2014 NCBC LEXIS 50, at *18 (N.C. Super. Ct. Oct. 13, 2014) (quoting *Palmer v. Oakland Farms, Inc.*,

2010 U.S. Dist. LEXIS 63265, at *4 (W.D. Va. June 24, 2010)). In *National Financial Partners*, for example, this Court struck several defenses that were not "well-grounded in fact" and "speculative" in nature. *Id.* at *18–23. There, the Court explained that:

> "[T]o survive a motion to strike, a defendant must offer more than a 'bare-bones conclusory allegation which simply names a legal theory but does not indicate how the theory is connected to the case at hand.'" *Villa v. Ally Fin., Inc.*, 2014 U.S. Dist. LEXIS 25624, at *6 (M.D.N.C. Feb. 28, 2014) (citation omitted); *see also Johnson v. Clark*, 2013 U.S. Dist. LEXIS 95492, at *4–6 (E.D.N.C. July 9, 2013) (striking "conclusory defenses" that failed to allege sufficient facts to provide the plaintiff with sufficient notice of the affirmative defenses in question); *Koehler v. United States*, 2012 U.S. Dist. LEXIS 163816, at *3–4 (E.D.N.C. Nov. 15, 2012) (providing that "conclusory defenses, presented without any factual support, should be stricken"); *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010) (explaining that "dismissal under Rule 12(f) is appropriate where the defendant has not articulated its defenses so that they are contextually comprehensible"). "When a court strikes a defense, the general practice is to grant the defendant leave to amend." *Banks v. Realty Mgmt. Serv.*, 2010 U.S. Dist. LEXIS 7501, at *3 (E.D. Va. Jan. 29, 2010).

*Id.* at *18–19;[3] *see also Staton v. N. State Acceptance, LLC*, No. 1:13-CV-277, 2013 U.S. Dist. LEXIS 105599, at *7 (M.D.N.C. July 29, 2013) ("At a minimum, therefore, a statement of an affirmative defense must give notice to an opponent of its basis and go beyond conclusions.").

---

[3] The Court's reference to analogous federal cases addressing the similarly worded Federal Rule of Civil Procedure 12(f) for guidance is appropriate. *See Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) ("The North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules. . . . Decisions under the federal rules are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." (citation omitted)); *see also Mecklenburg Cty. Buckley LLP v. Series 1 of Oxford Ins. Co. NC LLC*, 2020 NCBC LEXIS 36, at *9 n.2 (N.C. Super. Ct. Mar. 23, 2020).

13. Thus, a defense that is "conclusory," "contextually [in]comprehensible," "not well-grounded in fact," "speculative," or otherwise devoid of any factual support may be stricken pursuant to Rule 12(f), since such a defense will ordinarily fail to give a party sufficient notice of the nature of the defense as required by Rule 8. *See Nat'l Fin. Partners*, 2014 NCBC LEXIS 50, at *18–23; *Staton*, 2013 U.S. Dist. LEXIS 105599, at *7–9.

14. In addition, the North Carolina Court of Appeals has sometimes evaluated whether a defense could have a "possible bearing upon the litigation" when reviewing a Rule 12(f) ruling. *See, e.g. Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008) (holding that the trial court erred in striking a defendant's answer because the pleading contained, among other things, several defenses that could have "a possible bearing on the litigation"); *Daily*, 95 N.C. App. at 749, 384 S.E.2d at 56 (upholding the granting of a Rule 12(f) motion to strike a defense when the defense had "no possible bearing upon the litigation," in addition to the defense being legally insufficient (quoting *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108 (1978)); *see also Reese v. Brooklyn Vill., LLC*, 209 N.C. App. 636, 653, 707 S.E.2d 249, 260 (2011) (incorporating this standard into its review of a trial court's denial of a motion to strike two affirmative defenses).[4]

---

[4] Notwithstanding these Court of Appeals decisions, it appears that the "possible bearing upon the litigation" standard may be more appropriate for evaluating whether "*matter*" (i.e., non-defenses) are "redundant, irrelevant, immaterial, impertinent, or scandalous" pursuant to Rule 12(f), rather than evaluating the sufficiency of a defense. Indeed, in *Shellhorn*, the Court of Appeals first adopted the "possible bearing upon the litigation" standard in reviewing a trial court's order on a "motion to strike certain *allegations* from *the complaint on the grounds they were redundant, irrelevant, immaterial, and impertinent*." 38 N.C. App. at 313, 316, 248 S.E.2d at 106, 108 (emphasis added). In the Court's view, applying this

15.     With these principles in mind, the Court now turns to its analysis of the Motions to Strike.

### III.   ANALYSIS

16.     Before evaluating whether any of the defenses subject to the Motions to Strike should be stricken from the Smiths' Answers pursuant to Rule 12(f), the Court will address two threshold matters.

17.     First, the Court notes that there is some inconsistency amongst the Motions to Strike, the Memorandums in Support of the Motions, and the Smiths' Answers.  All of the Motions request that the Court strike the "First, Second, Third, Sixth, Twentieth, Thirty-Second and Thirty-Third Affirmative Defenses" from the Smiths' Answers.  In turn, all of Plaintiffs' Memorandums in Support of the Motions identify these defenses as follows:

   a. Smith Defendants' First Affirmative Defense, "Statute of Limitations";
   b. Smith Defendants' Second Affirmative Defense, "Failure to State a Claim";
   c. Smith Defendants' Third Affirmative Defense, "Ded [sic] Man's Statute";
   d. Smith Defendants' Sixth Affirmative Defense, "Laches";
   e. Smith Defendants' Twentieth Affirmative Defense "No Constructive Trust";
   f. Smith Defendants' Thirty-Second Affirmative Defense – "Nonexistance [sic]"; and
   g. Smith Defendants' Thirty-Third Affirmative Defense – "No Domination or control at the time of alledged [sic] misconduct."

---

standard to defenses seems inconsistent with Rule 8, and Rule 11 for that matter, since this standard opens the door for litigants to plead any bare-bones conclusory defense that "possibly" may have some bearing on the litigation later on.

(Merrell Mem. in Supp. 3, 6–8; Strack Mem. in Supp. 3, 6–8; Cochrane Mem. in Supp. 3, 6–8.) However, these defenses, as identified and numbered by Plaintiffs in their Motions to Strike and supporting briefing, do not all match up with the defenses asserted in the Smiths' Answers. The Cochrane Answer, for example, does not plead a thirty-third defense nor does it plead a defense titled "Nonexistence." (*See generally* Cochrane Answer.)

18. Notwithstanding this inconsistency, it is the Court's understanding, based on the briefs in support of and in opposition to the Motions to Strike, as well as the arguments made by counsel for the parties during the October 5 Hearing, that the following seven defenses, to the extent they are asserted by the Smiths in the applicable Answers, are subject to the Motions to Strike: (1) "Statute of Limitations"; (2) "Failure to State a Claim"; (3) "Dead Man's Statute—Rule 601 of the North Carolina Rules of Evidence"; (4) "Laches"; (5) "No Constructive Trust and Adequate remedy at law"; (6) "Nonexistence"; and (7) "No domination and control at time of alleged misconduct." (*See* Merrell Answer 1, 9, 12, 52, 67, 72; Strack Answer 1, 9, 12, 87, 102, 107; Cochrane Answer 1, 10, 13, 59, 72, 76.)

19. Next, Counsel for the Smiths took the position at the October 5 Hearing that, pursuant to Rule 8, distinguishing an affirmative defense from a non-affirmative defense is relevant to the Court's determination of the Motions to

Strike.[5] The Court will thus examine whether the Rule 12(f) standard of review should differ based on this distinction.

20. Plaintiffs, in the Motions to Strike and Memorandums in Support of the Motions, characterize all of the defenses subject to the Motions as "affirmative" defenses. "An affirmative defense is a defense that introduces a new matter in an attempt to avoid a claim, regardless of whether the allegations of the claim are true." *Williams v. Pee Dee Elec. Membership Corp.*, 130 N.C. App. 298, 301–02, 502 S.E.2d 645, 647–48 (1998) (citation omitted). Rule 8(c) identifies several "affirmative" defenses, including the statute of limitations and laches, two of the defenses subject to the Motions to Strike. *See* N.C.G.S. § 1A-1, Rule 8(c). As to the other five defenses subject to the Motions, the parties have not identified, and the Court is not aware of, any authorities treating these defenses as "affirmative" defenses, so the Court will not treat them as "affirmative" in nature for purposes of this Order and Opinion, notwithstanding Plaintiffs' assertion to the contrary.

21. In any event, it does not appear that the distinction between an affirmative defense and a non-affirmative defense is particularly relevant here. It is true that, at first glance, Rule 8 appears to set forth different pleading requirements for defenses depending on whether they are affirmative or not. Indeed, Rule 8(b) only states that "[a] party shall state in short and plain terms his *defenses* to each claim asserted[,]" while Rule 8(c) states that "a pleading shall contain a short and plain

---

[5] The Smiths' Briefs in Opposition to the Motions to Strike also allude this issue. (*See, e.g.*, Merrell Br. in Opp'n 15 (emphasizing that the Smiths' Failure to State a Claim defense is not an "affirmative" defense).)

statement of any matter constituting an avoidance or *affirmative defense* sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved." N.C.G.S. § 1A-1, Rule 8(b)–(c) (emphasis added). This variation between subsections (b) and (c) seemingly suggests that the pleading requirements for non-affirmative defenses may be even more liberal (i.e., less demanding) than those for true affirmative defenses.

22. The Court, however, has not located any controlling North Carolina law establishing that this is the proper reading of Rule 8.[6] And more importantly, regardless of the textual difference between subsections (b) and (c), it does not appear that North Carolina courts have applied a different Rule 12(f) standard of review based on whether a particular defense is governed by subsection (b) or (c). *See, e.g.*, *Nat'l Fin. Partners*, 2014 NCBC LEXIS 50, at \*15–24 (applying Rule 12(f) and striking several "affirmative" defenses, without discussing any distinctions between Rule 8(b) and Rule 8(c) or affirmative defenses and non-affirmative defenses, even though some of the stricken defenses, like "another action pending," may not have been true affirmative defenses). In contrast, our courts have time after time stressed the liberal notice pleading standard embodied by Rule 8 as a whole. *See, e.g.*, *Smith*, 84 N.C. App. at 123, 351 S.E.2d at 776; *see also Vernon*, 291 N.C. at 653, 231 S.E.2d at 595 (discussing "Rule 8(b)" and stating that "[t]he requirements for pleading a defense are no more stringent than the requirements for pleading a claim for relief" (citation omitted)).

---

[6] The official comments to Rule 8(b) and Rule 8(c) also do not support such a reading.

23.    Accordingly, the Court here will not apply a different Rule 12(f) standard of review based on whether some of the defenses subject to the Motions to Strike are true affirmative defenses or not.  Instead, the Court's analysis of the Motions to Strike will be guided by the Rule 12(f) standards adopted by North Carolina courts in reviewing motions to strike defenses, as set forth above in Section II.

24.    The Court now turns to the defenses subject to the Motions to Strike.

### A.    Statute of Limitations

25.    The Smiths' Answers first assert that Plaintiffs' claims against the Smiths "are barred in whole or in part by the relevant statute of limitations." (Merrell Answer 5; Strack Answer 5; Cochrane Answer 7.)

26.    At bottom, Plaintiffs argue that the Smiths' statute of limitations defense fails to satisfy Rule 8's notice pleading standard.  They contend that the Smiths did not provide them with sufficient information to understand the essence of the defense because the Smiths did not "identify the applicable statute of limitation, fail[ed] to identify when the limitation period began, or when it may have ended, and fail[ed] to provide sufficient facts as to when and how . . . Plaintiffs could have been placed on notice of their claims."  (Merrell Mem. in Supp. 5.)

27.    The Court is not persuaded by Plaintiffs' arguments.  To begin with, the Court notes that North Carolina law does not appear to require litigants to plead the statute of limitations defense by referencing a specific statute, contrary to Plaintiffs' apparent belief. (Merrell Mem. in Supp. 5.) In fact, on one occasion, the North Carolina Court of Appeals held that a defendant's "failure to plead" the applicable

statute of limitations "by precise number and subsection [was] not fatal under N.C.G.S. § 1A-1, Rule 8(c)." *Bonestell v. N. Topsail Shores Condos., Inc.*, 103 N.C. App. 219, 223, 405 S.E.2d 222, 225 (1991). As such, even though the Smiths' Answers fail to cite to a specific statute of limitations, this failure alone does not warrant striking their defense.

28. More importantly, the Smiths' defense here is comprised of at least eight pages, in which they plead extensive factual support for their assertions that Plaintiffs' respective ownership interests in CB&B were transferred to Mr. Siskey more than eleven years prior to the filing of the CBB Actions and that Plaintiffs knew or reasonably should have discovered the facts underlying their claims more than ten years prior to the filing of the CBB Actions. (*E.g.*, Merrell Answer 1–9.) Therefore, although the Smiths' Answers do not expressly state that a specific limitations period has been exceeded (e.g., a three-year period), the Smiths' detailed pleading does put Plaintiffs on notice that the Smiths intend to show that all or some of Plaintiffs' claims are barred by the "longest conceivably applicable non-real property statute of limitations in North Carolina" (ten years) and that this limitations period cannot be tolled by the discovery rule to the extent that this rule applies to any of Plaintiffs' claims. (Merrell Br. in Opp'n. 4).

29. Thus, the Smiths' statute of limitations defense meets Rule 8's liberal notice pleading standard, and the Court, in its discretion, declines to strike this defense.

## B. Failure to State a Claim

30. The Smiths' Answers also assert that Plaintiffs' Complaints "fail[] to state a claim upon which relief can be granted against" the Smiths. (Merrell Answer 9; Strack Answer 9; Cochrane Answer 10.)

31. Plaintiffs take issue with the fact that the Smiths, in part, assert this defense on behalf of CB&B and non-party Home Run Holdings, LLC ("HRH").[7] (*See e.g.*, Merrell Answer 9 ("[T]he Second Amended Complaint fails to state a claim upon which relief can be granted against Defendants, HRH, or [CB&B]").)" Plaintiffs argue that this tactic by the Smiths renders their failure to state a claim defense "contextually [in]comprehensible" as well as "redundant, irrelevant, immaterial, [and] impertinent." (Merrell Mem. in Supp. 6.) The Court disagrees.

32. First, the Court notes that Rule 12(h) expressly permits a party to assert the "*defense* of failure to state a claim upon which relief can be granted . . . in any pleading permitted or ordered under Rule 7(a)." N.C.G.S. § 1A-1, Rule 12(h)(2) (emphasis added). An answer to a complaint is one of the pleadings permitted under Rule 7(a). *See id.* § 1A-1, Rule 7(a). Therefore, the Smiths' failure to state a claim defense, as pleaded in their Answers, is subject to Rule 8's notice pleading standard, and the Court will accordingly evaluate whether this defense gives Plaintiffs sufficient notice of its nature.

---

[7] At the time that the Smiths filed the Answers, HRH was a named Defendant in the CBB Actions, but thereafter, Plaintiffs voluntarily dismissed without prejudice their claims against HRH. (ECF Nos. 40 [19 CVS 21650]; 56 [19 CVS 22027]; 40 [19 CVS 23665].)

33. Here, when the Smiths' failure to state a claim defense is read together with Plaintiffs' Complaints, this defense is contextually comprehensible and gives Plaintiffs adequate notice of the nature of the defense. As the Smiths point out in their Briefs in Opposition to the Motions to Strike, Plaintiffs' Complaints allege that CB&B, HRH, and Mr. Smith are or acted as alter egos of each other and also ask the Court to enter judgments against Mr. Smith as the alter ego of CB&B and to hold him individually responsible for any judgments against CB&B. (*See* Merrell Br. in Opp'n 14–15 (citing Plaintiffs' Complaints).) Therefore, if the Court were to make a future determination that CB&B, HRH, and Mr. Smith were each other's alter egos during the time periods relevant to the CBB Actions, then Mr. Smith might, in theory, be entitled to assert whatever defenses are available to CB&B/HRH. *See Window World of Baton Rouge, LLC v. Window World, Inc.*, 2019 NCBC LEXIS 11, at \*19 (N.C. Super. Ct. Feb. 11, 2019) ("Indeed, under the instrumentality rule, the alter ego and the shareholder [are] *treated as one and the same person.*" (internal quotation marks and citations omitted)).

34. It was therefore appropriate for the Smiths to plead that Plaintiffs' Complaints fail to state a claim not only against the Smiths, but also against CB&B and HRH. And based on Plaintiffs' own alter ego allegations against Mr. Smith and CB&B/HRH, Plaintiffs should be on notice as to what the Smiths intend to show by pursuing this defense on behalf of the two entities. Moreover, the Smiths explain, in more than two pages of their Answers, why each of Plaintiffs' claims against the Smiths fails to state a claim, and they cite to *Aldridge v. Metro. Life Ins. Co.*, 2019

NCBC LEXIS 116 (N.C. Super. Ct. Dec. 31, 2019), where this Court dismissed claims similar to the ones raised by Plaintiffs here.  (*E.g.*, Merrell Answer 9–11.)

35.     In sum, the Smiths' failure to state a claim defense satisfies Rule 8's liberal pleading requirements, and the Court does not find this defense to be redundant, irrelevant, immaterial, or impertinent.  For these reasons, the Court, in its discretion, declines to strike this defense.

**C.      The Dead Man's Statute**

36.     The Smiths' Answers assert—pursuant to North Carolina Rule of Evidence 601(c), N.C.G.S. § 8C-1, Rule 601(c)—a "standing objection" to Plaintiffs referencing or introducing any oral communications with Mr. Siskey.  (Merrell Answer 12; Strack Answer 12; Cochrane Answer 13–14.)

37.     Plaintiffs argue that the Court should strike this "defense" from the Smiths' Answers on the basis that it is not the type of "defense" contemplated or governed by North Carolina Rule of Civil Procedure 8.  (Merrell Mem. in Supp. 6.)  The Smiths, meanwhile, counter that "under North Carolina law, [they] are entitled to object to the introduction of [certain] communications, and there is no reason that such an objection cannot appear in an answer."  (Merrell Br. in Opp'n 16.)

38.     Rule 601(c), commonly known as the Dead Man's Statute, is an evidentiary rule governed by our Rules of Evidence that is designed to exclude evidence of certain types of statements made by deceased persons.  *See Crosland v. Patrick*, No. COA19-713, 2020 N.C. App. LEXIS 663, at *4–7 (Ct. App. Sep. 15, 2020).  The Dead Man's Statute could very well end up being relevant later on in this litigation, perhaps in

the summary judgment or trial setting. However, the Court finds it unusual, and indeed impertinent, that the Smiths have pleaded this evidentiary "objection" as a defense in their Answers to Plaintiffs' Complaints, since the Court is certainly not considering the admissibility of evidence at this stage of the litigation.

39.     As a result, the Court, in its discretion, will strike the Smiths' Dead Man's Statute "defense" from the Answers without prejudice to them raising this evidentiary objection at an appropriate time.

**D.     Laches**

40.     The Smiths' Answers further assert that "Plaintiffs' claims are barred in whole or in part by [l]aches." (Merrell Answer 53; Strack Answer 87; Cochrane Answer 59.)

41.     As to this defense, Plaintiffs contend that the Smiths did not provide Plaintiffs with sufficient information for them to understand the nature of the defense. (Mem. in Supp. 7.) Plaintiffs also argue that the Smiths' Answers fail to allege how they were prejudiced by any delay in bringing suit (a requirement of the laches defense). (Mem. in Supp. 7.) That is not so.

42.     Within four pages of the Answers, the Smiths allege that Plaintiffs could have discovered their claims between late 2007 or early 2008, when they transferred their ownership interests in CB&B to Mr. Siskey, and that in the years following this time period, a number of transactions involving CB&B have occurred and cannot be undone, including releases that the Smiths received from CB&B shareholders as part of the 2010 sale of the company. (*E.g.*, Merrell Answer 53–57.) The Smiths' extensive

pleading in support of their laches defense sufficiently puts Plaintiffs on notice that the Smiths intend to argue that Plaintiffs' delay in filing the CBB Actions has resulted in prejudice to the Smiths.

43. The Smiths' laches defense thus satisfies Rule 8's liberal pleading requirements. As a result, the Court, in its discretion, declines to strike this defense.

### E. No Constructive Trust and Adequate remedy at law, Nonexistence, and No Domination and Control at time of the alleged misconduct

44. Finally, the Smiths' Answers plead the following defenses:

a. "No Constructive Trust and Adequate remedy at law." (Merrell Answer 67; Strack Answer 102; Cochrane Answer 72.)
b. "Nonexistence." (Merrell Answer 72; Strack Answer 107.)
c. "No domination and control at time of alleged misconduct." (Merrell Answer 72; Strack Answer 107; Cochrane Answer 77.)

The crux of these three defenses is that HRH did not exist at the time of the alleged fraudulent scheme implicating the Smiths.

45. Plaintiffs believe that these defenses are "redundant, irrelevant, immaterial, [and] impertinent" because they "confusingly" seek to assert defenses belonging to HRH. (Merrell Mem. in Supp. 7–8.) As explained above in the Court's analysis of the Smiths' failure to state a claim defense, because Plaintiffs have alleged that CB&B, HRH, and Mr. Smith are or acted as alter egos of each other during the time periods relevant to the CBB Actions, it makes sense that Mr. Smith is seeking to avail himself of whatever defenses are available to CB&B, or as relevant here, HRH. And as noted by the Smiths in their Briefs in Opposition to the Motions to

Strike, pleading that HRH did not exist during the pertinent time periods is relevant to the alter ego issue raised by Plaintiffs' Complaints. (Merrell Br. in Opp'n 20.)

46. Accordingly, these three defenses related to HRH meet Rule 8's notice pleading standard, and the Court cannot conclude at this stage of the litigation that these defenses are redundant, irrelevant, immaterial, or impertinent.

47. Thus, the Court, in its discretion, declines to strike these defenses.

## IV. CONCLUSION

48. For the foregoing reasons, the Court, in its discretion, **GRANTS** in part and **DENIES** in part the Motions to Strike as follows. The "Dead Man's Statute—Rule 601 of the North Carolina Rules of Evidence" defense shall be **STRICKEN** from the Smiths' Answers without prejudice. Furthermore, the Court **DECLINES** to strike the "Statute of Limitations"; "Failure to State a Claim"; "Laches"; "No Constructive Trust and Adequate remedy at law"; "Nonexistence"; and "No domination and control at time of alleged misconduct" defenses from the Smiths' Answers.

**SO ORDERED**, this the 22nd day of October, 2020.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
for Complex Business Cases